**Twitty v. Minnesota Mining & Manufacturing Co.**

*Robert J. Murphy for plaintiff.*

*Joel D. Gusky, Walter S. Jenkins, Robert M. Button, William G. Cilingin, Gary B. Cutler, Basil A. DiSipio, Lisa B. Flickstein, John F. Kent, Byron L. Milner, William V. Roeder, E. Douglas Sederholm,* and *William J. Winning,* for defendants.

KLEIN, R.B. *J.,* June 23, 1993 —

OPINION REGARDING ORDER REFUSING TO CANCEL SUMMARY JURY TRIAL

Plaintiff Alfred Twitty has appealed from a summary jury trial that has already taken place based on the grounds that the court did not have the power to order the proceeding and that somehow the proceeding infringed on the rights of the jurors who sat. He appeals although he voiced no objection to the proceeding until less than

three days before, and although he still has all of his rights to a jury trial on the issues.

The plaintiff challenges the power of the trial court to use innovative methods to deal with the great volume of cases that must be disposed of by all of our courts, particularly the courts in urban areas. The plaintiff also asks the court to allow him to sit by mutely while attorneys, doctors and others spend a great deal of time and money in preparation and then, less than three days before the proceeding, offer his first complaint about the procedure.

Twitty is the plaintiff in a multi-defendant case, alleging that he developed silicosis while chipping the silica-containing molds off of metal parts his employer manufactured. The case had been scheduled for trial, but was postponed indefinitely because of the institution of the "Day Backward" program in Philadelphia.

Plaintiff's argument that the summary jury trial that was then held was improper fails for several reasons:

(1) The court has broad power to direct the parties to appear for conferences and deal with such matters as may aid in the disposition of a case. A summary jury trial is a widely recognized method of attempting to bring a case to settlement that is increasing in usage throughout the country.

The claim of Robert J. Murphy, Esquire, counsel for Twitty, that somehow the rights of the jurors were violated is without merit, particularly since the court followed his suggestion and excused any potential juror who did not want to participate in the proceeding.

(2) Mr. Murphy never raised any objection to the summary jury trial when it was suggested by the court. He

agreed to the proceeding before any issue of whether it was "voluntary" or "mandatory" arose. His first objection to the proceeding came the week of the summary jury trial, after many attorneys had gone to considerable time and expense to prepare. He has waived any objection.

(3) The summary jury trial has already been held after both the Superior and Supreme Courts rejected Mr. Murphy's request for a restraining order, and the matter is moot.

## FACTS

Mr. Twitty is the plaintiff in a silicosis case that has been before me for several years and has been the subject of multiple conferences. Because of the medical dispute and the multitude of parties, the case would take a minimum of four to five weeks to try. Trial was initially scheduled for January 19, 1993, but postponed by order of the administrative judge of the Trial Division. All of the judges in the civil program were to remain available to take cases from the new "Day Backward" program. Complex cases were put on "hold," and although some are now starting to reach the trial list, the continuance was estimated to be for at least six months.

Since all parties had reserved January 19, 1993, for the trial date, a conference was held instead on that day. I suggested that we might be able to come closer to settlement if we could have the doctors and the plaintiff presented to a "summary" jury. The "summary" jury would be presented with the issue as to whether or not Mr. Twitty had silicosis; and, if they found he did, what figure would be appropriate for damages. Counsel started discussing the methods for the proceeding. One defense coun-

sel asked Mr. Murphy if he would object if the defense counsel did the scheduling of the physicians, since the doctors knew each other and would have to coordinate calendars. Mr. Murphy agreed.

The meeting was breaking up, with the understanding that a date for the summary jury trial would be set after the doctors had a chance to check their schedules. An attorney for one of the so-called "peripheral" defendants asked, "Judge, are you ordering the summary jury trial? I responded, "Yes, I'm ordering it." He said, "O.K., that will make it easier to deal with my client." This conversation took place well after the idea was initially proposed and after many of the details were discussed. At no time then or afterwards at the meeting did Mr. Murphy raise any objections.

On February 11, 1993, Walter S. Jenkins, Esq., a counsel for one of the defendants, notified all other counsel that he had found a date when both doctors were free, February 26. On February 12, 1993, Mr. Murphy wrote the court confirming that the summary jury trial would not be binding nor a matter of record and would be conducted on a reverse bifurcated basis (trying medical causation and damages, but not liability). He also noted that other details would be the subject of further discussion and/or agreement. On February 17, 1993, the court responded to that and other correspondence, adopting Mr. Murphy's suggestions, and denying a request from a defendant to postpone the summary trial. On February 17, Mr. Murphy wrote the court, copying all counsel, saying that he was unavailable because he had an appointment in New York on February 26. He raised no other objection to the summary proceeding. On February 22, Mr. Murphy sent a

fax to the court, copying counsel, confirming that the case would be reverse bifurcated, and suggesting that it was necessary to advise the panel of jurors that the case was not binding. Later, at the summary proceeding, the court did explain that the proceedings might not be final and excused several jurors who did not wish to serve.

On February 23, 1993, at 3:28 p.m., Mr. Murphy sent another fax to the court, claiming that after research, he found that the summary jury trial creates legal and ethical problems and asking the court to cancel the proceedings scheduled less than three days away.

I refused to cancel the summary jury trial because Mr. Murphy's objection was not timely under the circumstances, many others had gone to considerable effort to prepare, and it was an appropriate method to attempt to resolve a case without four or five weeks of trial. Mr. Murphy filed an emergency appeal to the Superior Court which was denied by Judge Cavanaugh after hearing, and another appeal to the Supreme Court which was denied by Chief Justice Nix.

### 1. *The Court Has Broad Power To Administer The Disposition Of Cases; A Summary Jury Trial Is A Widely Recognized Method Of Dispute Resolution That Can Be Directed In An Appropriate Case*

When courts are faced with backlogs delaying trials for five years and more, they are obligated to look for ways to give people their day in court as speedily as possible. Today, it is clear that there is no prospect of an infusion of large sums of money for many more court-

rooms and judges to handle the many more cases in the courts' inventories. Alternatives must be considered.

The Rules recognize this and give trial judges broad powers in their pretrial proceedings to aid in the disposition of cases short of a full jury trial.

Pennsylvania Rule of Civil Procedure 212, "Pre-Trial Conference" provides, in pertinent part, the court with the following powers:

"In any action the court, on its own motion or on motion of any party, may direct the attorneys for the parties to appear for a conference to consider:...

"(f) Such other matters as may aid in the disposition of the action."

This broad Rule of Civil Procedure, which was promulgated in order to streamline the trial process, confers upon the court the power to order, even on its own motion, "such other matters" that would assist in the expeditious and just resolution of civil actions. A one day, non-binding summary jury trial, which is an accepted form of dispute resolution, comports with the spirit of the Rule, especially considering the fact that this short proceeding could obviate the need for a four to five week trial.

The argument that somehow a summary jury trial illegally imposes on jurors is without merit. In any event, the court followed Mr. Murphy's request and excused any juror who wished to be excused.

The idea of a non-binding advisory jury trial, rather than being illegal, is imbedded in other sections of the law of Pennsylvania. There is statutory and procedural precedence for conducting a non-binding summary jury trial.

For actions in equity, Pennsylvania Rule of Civil Procedure 1513, "Trial By Jury. Advisory Verdict," provides:

"The court on its own motion or upon the petition of any party may submit to trial by jury any or all issues of fact. The trial by jury shall be given a preference on the trial list. The verdict of the jury shall be in the form of answers to specific questions and shall not be binding upon the court."

In probate actions, 20 Pa.C.S. §777(c) "Will Contest and Other Matters" provides:

"When a contest shall arise concerning the validity of a writing alleged to be testamentary, or concerning any matter other than as provided in subsections (a) and (b) of this section, the orphans court division, in its discretion at any stage of the proceedings, may impanel a jury to decide any question of fact, but the verdict of the jury shall be advisory only."

Although these statutory and procedural provisions do not pertain to actions in law, they do stand for the proposition that the Supreme Court and State Legislature find that conducting advisory jury trials is a useful tool for resolving certain disputes.

Indeed, the use of summary jury trials has gained national acceptance. Coincidentally, on April 22, 1993, just when Mr. Murphy was voicing his objections to summary jury trials, the United States Supreme Court adopted proposals made by the United States Judicial Conference to amend the Federal Rules of Civil Procedure to *allow* summary jury trials. These proposals are now pending before the United States Congress.

Specifically, the proposed amendment to Federal Rule of Procedure 16, "Pretrial Conferences; Scheduling; Management" provides:

*"(c) Subjects for Consideration at Pretrial Conferences.*

"At any conference under this rule consideration may be given, and the court may take appropriate action, with respect to...

(9) settlement and the use of special procedures to assist in resolving the dispute when authorized by statute or local rule...." Available in, The Nat'l Law J., at S3, Vol. 15, No. 40 (June 7, 1993)

The "Committee Notes" following the proposed amendment to Rule 16 provide:

*"Subdivision (c)*

"Paragraph (9) is revised to describe more accurately the various procedures that, in addition to traditional settlement conferences, may be helpful in settling litigation. Even if a case cannot immediately be settled, the judge and attorneys can explore possible use of alternative procedures such as mini-trials, *summary jury trials,* mediation, neutral evaluation and non-binding arbitration that can lead to consensual resolution of the dispute without a full trial on the merits. The rule acknowledges the presence of statutes and local rules or plans that may authorize use of some of these procedures even when not agreed to by the parties. (citations omitted) The rule does not attempt to resolve questions as to what extent a court would be authorized to require such proceedings as an exercise of inherent powers." *Id.* (emphasis added)

It is worthy to note that the comment provides that a court may authorize, through statutes and local rules the "use of some of these procedures *even when not agreed to by the parties.*" (emphasis supplied) Indeed, preceding this proposed amendment to Rule 16 and the Committee Note, the Judicial Conference of the United States, in 1984, adopted the following resolution:

"Resolved, that the Judicial Conference endorses the experimental use of summary jury trials as a potential effective means of promoting the fair and equitable settlement of lengthy civil jury cases." *Report of the Proceedings of the Judicial Conference of the United States,* 88 (1984).

As noted in the Committee Note to the proposed amended Rule 16, the conference rejected a suggestion that the summary jury trial should only be conducted when all parties voluntarily agree. See S. Goldberg; E. Green; F. Sander, *Dispute Resolution* 282-83 (1985).

Chief Justice Warren E. Burger, in his 1983 Year-End Report on the Judiciary stated that "... the summary jury verdict [is] being used in various jurisdictions in the United States and [is] proving effective. See T. Lambros, J. (N.D. Ohio), "The Summary Jury Trial and Other Alternative Methods of Dispute Resolution, A Report to the Judicial Conference of the United States Committee on the Operation of the Jury System," 103 F.R.D. 461 (1984) (hereinafter referred to as the "Lambros Report").

Judge Lambros reports on the national acceptance and use of the summary jury trial as a productive settlement tool. In his Report, Judge Lambros cites many other federal jurisdictions which successfully conduct summary jury

trials, including the Eastern District of Pennsylvania and the District of Montana where Chief Judge James Battin adopted a standing order providing for the use of a summary jury trial. Lambros Report at 475.

Conducting a summary jury trial using jurors in the service of the Philadelphia Court of Common Pleas does not constitute an obstruction of justice, the misuse of a jury, or the deprivation of Mr. Twitty's right to a jury trial. In fact, the overwhelming use and commendation of the summary jury trial as a tool for dispute resolution—both on the federal and state levels—points the other way.

Also, the cost and time saving benefits of conducting summary jury trials cannot be overstated. For example, in the Northern District of Ohio, based on statistics available in January, 1984, of 88 cases assigned for summary jury trials, 39 settled before the summary jury trial; 49 cases were presented as summary jury trials, and of those, 45 cases settled after receiving summary jury verdicts. That is, 92 percent of those cases presented as summary jury trials settled before actual trial. While the particular circumstances of these cases are not known, the high percentage of settlement after a summary jury trial indicates that this procedure was an effective way of expeditiously resolving disputes and eliminating the need to expend court time, money and resources on protracted civil trials. Lambros Report, Table 1 at 472; *Dispute Resolution* 283.

In light of the national success of summary jury trials, this court must consider and act on the possibility of saving the taxpayers of Philadelphia the cost of a four to five week trial in favor of a one day proceeding. There-

fore, the plaintiff's concerns as to wasting this court's time and resources on a one day summary jury trial are misplaced.

### 2. Plaintiff Waived Any Objection To The Summary Jury Trial By Not Objecting To The Procedure Until Less Than Three Days Before The Trial When The Other Parties Had Gone To Considerable Time And Expense To Prepare

It is noted that Mr. Murphy's recollection of the events is somewhat different than that of the other counsel and the court. The documents are attached which shed light on this issue.

As noted above, the idea of the summary jury trial came up in discussion after a supposedly "firm" trial date had been canceled. Not only did Mr. Murphy not object to the proceeding, but he participated in a discussion as to methodology.

During this conference, the court took notes on the contents of the discussions and immediately thereafter reduced these notes to a "memorandum to file." Relative to the court's suggestion of a summary jury trial, the court heard no objection raised by any of the counsel present, including Mr. Murphy. In fact, the court's memorandum to file contains the sentence, "The parties seemed to go along with this."

It was only as the conference was ending that the trial judge was asked by an attorney *(not* Mr. Murphy) if the court was ordering the summary jury trial. The court responded in the affirmative.

At no time did the court ever suggest that this proceeding would supplant, delay or otherwise affect the plaintiff's right to a jury trial.

Plaintiff's objection to the summary jury trial was not voiced until approximately four weeks after the conference, and less than three days before the summary jury trial. This objection was made after the defendants expended time and effort in preparing evidence, including a demonstrative film; canceling other engagements; and arranging for the live testimony of medical experts. The objection made by the plaintiff came too late as the order for the proceeding was in effect for approximately one month and other parties had relied on it. As Mr. Murphy never voiced his client's objection to the summary jury trial in a reasonable period of time, plaintiff's objection is waived. The merits of the objection are also unavailing for the reasons discussed above.

### 3. *The Issue Concerning The Summary Jury Trial Is Moot, As The Trial Has Already Taken Place*

A summary jury trial has been held after both the Superior and Supreme Courts rejected Mr. Murphy's request for a restraining order. Therefore, the matter is moot.